IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL 5,** : **Plaintiff** : v. : : **INTER-STATE TILE & MANTEL CO., INC.,** : **Defendant** : | **CIVIL ACTION NO. 1:07-CV-1150** **(Judge Conner)** |

## **MEMORANDUM**

Plaintiff International Union of Bricklayers and Allied Craftworkers, Local 5 ("Local 5") initiated this action to enforce a labor arbitration award obtained against defendant Inter-State Tile & Mantel Co., Inc. ("Inter-State") pursuant to a collective bargaining agreement.[1] (See Doc. 15 ¶ 2; Doc. 20 ¶ 2.)  Presently before the court are the parties' cross-motions for summary judgment (Docs. 13, 16).  For the reasons that follow, the court will grant Local 5's motion for summary judgment and will deny Inter-State's.

---

[1] The court's subject matter jurisdiction over this action derives from § 301(a) of the Labor Management Relations Act, which provides, in pertinent part, as follows:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a); see also Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agric. Implement Workers of Am., 856 F.2d 579, 583-90 (3d Cir. 1988) (holding that § 301(a) confers jurisdiction over issues regarding the existence and construction of collective bargaining agreements upon district courts).

I.    **Statement of Facts**[2]

Inter-State is an employer of tile workers, some of whom are members of unions such as Local 5. Inter-State and Local 5 entered into a series of collective bargaining agreements, the most recent of which expired on April 30, 2006. (Doc. 18 ¶ 3; Doc. 23 ¶ 3.) When Inter-State elected not to renew the agreement, the majority of Inter-State's employees decided to sever their relationships with Local 5 and to remain employed by Inter-State. (Doc. 18 ¶¶ 5-7; Doc. 23 ¶¶ 5-7.)

At around the same time, Inter-State was performing work in the jurisdiction of International Union of Bricklayers and Allied Craftworkers, Local 1 ("Local 1"). (Doc. 15 ¶¶ 7-8; Doc. 20 ¶¶ 7-8.) On April 25, 2006, Inter-State signed Local 1's collective bargaining agreement, which expires on April 30, 2009.[3] (Doc. 15 ¶¶ 9-10; Doc. 26 ¶¶ 9-10.) The Local 1 collective bargaining agreement contains the following traveling contractors clause:

---

[2] Given the applicable standard of review, the court will present the facts in the light most favorable to the non-moving party with respect to each motion. See infra Part II. The court must accept all "findings of fact and inferences to be drawn therefrom" that arise from any issue presented to the arbitrator. See Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem., & Energy Int'l Union Local No. 2-991, 385 F.3d 809, 816 (3d Cir. 2004).

[3] Inter-State's president stated in a sworn affidavit that he "signed the Local 1 collective bargaining agreement without thoroughly reviewing it and without any negotiations whatsoever." (Doc. 18, Ex. A at 2.)

2

> When the Employer has any work of the type covered by this Agreement to be performed outside of the area covered by this Agreement and within the area covered by the *standard* Collective Bargaining Agreement of another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect on the job site area with respect to all employees, wherever hired, who perform such work, except as provided in the next sentence of this paragraph.  Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale required under this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the job site local Agreement.  If employees are sent to work on a project in an area where there is no local Agreement covering the work which falls within the scope of this Agreement, the full terms and conditions of this Agreement will apply.

(Doc. 15 ¶ 12; Doc. 26 ¶ 12 (emphasis added)).

On May 1, 2006, Local 5 entered into a standard collective bargaining agreement with various employers of tile workers within its jurisdiction. (Doc. 15 ¶¶ 19-20; Doc. 26 ¶¶ 19-20.)  Inter-State was not one of them. (See Doc. 1, Ex. A at 21.)  At some point after May 1, 2006, Local 5 learned that Inter-State was performing work within its jurisdiction without complying with the terms of its standard collective bargaining agreement. (Doc. 15 ¶ 21; Doc. 26 ¶ 21.)  On July 11, 2006, Local 5 filed a grievance regarding Inter-State's alleged noncomplying practices. (Doc. 15 ¶ 22; Doc. 26 ¶ 22.)  The grievance accused Inter-State of violating the traveling contractors clause of Local 1's collective bargaining agreement.  Specifically, the grievance provides, in pertinent part, as follows:

> Under [the traveling contractors clause of Local 1's collective bargaining agreement], whenever Interstate performs work outside of the area covered by this collective bargaining agreement, Inter State has agreed "to abide by the full terms and conditions of the standard Agreement in effect on the job site area with respect to all employees, wherever hired, who perform such work." As you are aware, [Local 5] does have a standard collective bargaining agreement with various tile and marble contractors covering work of the type covered by the Local 1 collective bargaining agreement and work which is customarily performed by Inter State.
> . . .
> Since May 1, 2006, . . . Inter State has failed to comply with the provisions of the Local 5 agreement while performing work within the jurisdiction of Local 5 and the area covered by the Local 5 collective bargaining agreement. Based on information that Local 5 has received, Inter State has failed to pay to all of its employees performing work covered by the Local 1 and Local 5 collective bargaining agreements the mandatory wages and fringe benefits provided in the Local 5 collective bargaining agreement. For example, Inter State has failed to submit contributions to the employee benefit funds as provided for under the Local 5 agreement for the month of May, 2006.

(Doc. 15 ¶ 22; Doc. 26 ¶ 22.)

When the grievance failed to resolve the dispute, Local 5 submitted the issue to arbitration.[4] (Doc. 15 ¶ 24; Doc. 26 ¶ 24.) After holding a hearing on December 5, 2006 in which both parties participated, arbitrator Charles D. Long, Jr. rendered a decision in favor of Local 5. (Doc. 15 ¶¶ 25, 28; Doc. 26 ¶¶ 25, 28; Doc. 1 ¶ 13; Doc. 4 ¶ 13.) The decision, which was issued on March 23, 2007, provides that the "traveling contractors clause in the Local 1 Agreement requires Inter-State to comply with the terms and conditions of [the] standard Agreement of [Local 5] even

---

[4] Local 5's collective bargaining agreement provides for arbitration of "[a]ny and all disputes, complaints, controversies, or grievances, whatsoever, between the Union . . . and the Employer, which directly or indirectly arise under, out of, or in connection with, or in any manner related to this Agreement, or in breach thereof, or the acts, conduct or relations between the Parties." (Doc. 1, Ex. A at 8.)

though Inter-State is not a signatory to that Agreement." (Doc 15 ¶ 28; Doc. 26 ¶ 28.) The decision also orders Inter-State "to make retro-active pay adjustments to employees and make [Local 5] whole for all monies owing for required health and welfare contributions, including pensions, and to otherwise comply with the terms and conditions of the Local 5 Agreement . . . in effect at the jobsite area." (Id.) Inter-State admits that it has failed to comply with the mandates of this decision. (Doc. 1 ¶ 17; Doc. 4 ¶ 17.)

On June 27, 2007, Local 5 instituted the instant action, seeking judicial enforcement of the arbitration award. (See Doc. 1.) The parties have filed cross-motions for summary judgment regarding the enforceability of the arbitration award. The motions have been fully briefed and are ripe for disposition.

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently. InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); see also Irvin v. United Mine Workers of Am. Health & Ret. Funds, No. 05-1072, 2007 WL 539646, at *1 (W.D. Pa. Feb. 15, 2007); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; see also Strategic Learning, Inc. v. Wentz, No. 05-467, 2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).

### III.  Discussion

In the instant action, Local 5 seeks to enforce the arbitration award against Inter-State. Inter-State argues that the award should be vacated as it "fails to draw its essence from the collective bargaining agreement" and violates the National Labor Relations Act and the Employee Retirement Income Security Act. (See Doc. 4 at 6-7.) Local 5 counters that Inter-State has waived its affirmative defenses by failing to file a timely motion to vacate the arbitration award. The court will address this timeliness issue before turning to the underlying issue of the arbitrability of the parties' dispute.

**A.     Failure to File Timely Motion to Vacate**

This is a confirmation action asserted pursuant to § 301 of the Labor Management Relations Act. Section 301 does not contain an explicit statute of limitations. See 29 U.S.C. § 185; see also Banta Tile & Marble Co., Inc. v. Int'l Union of Bricklayers, No. 07-2830, 2007 WL 3287388, at *1 (E.D. Pa. Nov. 5, 2007). Accordingly, "[b]oth the Supreme Court and the Third Circuit have held that the appropriate state statute provides the period of limitations respecting suits brought under section 301." Banta, 2007 WL 3287388, at *2 (citing United Auto. Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05 (1966) and Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 336 (3d Cir. 1999)). In Pennsylvania, a party has thirty days to initiate an action to vacate, modify, or correct an arbitrator's award, see Serv. Employees Int'l Union v. Office Ctr. Servs., Inc., 982 F.2d 89, 93 (3d Cir. 1992) (citing 42 PA. CONS. STAT. ANN. § 7314(b)), and six years to initiate an action to enforce an arbitration award, see Office & Prof'l Employees, 186 F.3d at 336; see also 42 PA. CONS. STAT. ANN. § 5527(2).

The Third Circuit has concluded that there are "sound reasons" for the disparity in limitations periods between an action to vacate and an action to confirm an arbitration award. The court stated that the "policy of promoting finality of arbitration" would not be served "by allowing one aggrieved by an award to sit out the period for vacating it and then challenge it when an enforcement suit is brought." Serv. Employees Int'l Union v. Office Ctr. Servs., Inc., 670 F.2d 404, 412

(3d Cir. 1982); see also Serv. Employees Int'l Union, 982 F.2d at 93.  However, the

"parties to an arbitration may be willing or find it necessary to readjust the terms of

the arbitration award before seeking its confirmation."  Serv. Employees Int'l

Union, 670 F.2d at 412.  Because of this, "the Pennsylvania legislature may with

good reason have allowed a longer period of time for the confirmation of a

concededly valid award without forcing the parties to resort to judicial

involvement."  Id.

In the instant case, Local 5's complaint was filed well within the six year

statute of limitations for confirmation actions.  In contrast, Inter-State failed to file

a motion to vacate within the thirty day limitations period.  The court finds that this

failure prohibits Inter-State from raising the same issues as affirmative defenses in

the instant confirmation action.  See Serv. Employees Int'l Union, 982 F.2d at 93

("[I]f a defendant has important defenses to an arbitration award, he should raise

them within the period prescribed for actions to vacate rather than wait to raise

them as defenses in a confirmation proceeding.").  To hold otherwise would violate

the public policy favoring finality of arbitration awards. Accordingly, the court must deny Inter-State's motion for summary judgment.[5]

### B. Arbitrability of the Dispute

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Despite the court's finding that Inter-State has waived its right to assert defenses to enforcement of the arbitration award, the court must address the antecedent question of whether the dispute was properly arbitrable. U.S. Small Business Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006) (stating that absent language in the parties' agreement clearly providing otherwise, the arbitrability of a dispute is a question of law for the court to determine); General Electric Co. v. Deutz AG, 270 F.3d 144, 154 (3d Cir. 2001) (same).

When determining whether a dispute is arbitrable, a court must analyze two basic issues: (1) whether the parties have entered into a written agreement to

---

[5] Inter-State urges the court to apply the three month statute of limitations contained in the Federal Arbitration Act when construing its affirmative defenses. (See Doc. 21 at 10-14); see also 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). Given the weight of Third Circuit precedent to the contrary, the court declines to adopt the Federal Arbitration Act's statute of limitations. However, assuming *arguendo* that the court were to apply the *three* month limitations period, Inter-State's affirmative defenses would still be untimely. In the instant case, the arbitration award was issued on March 23, 2007, and Inter-State asserted its affirmative defenses more than *four* months later on July 27, 2007. (See Doc. 4.)

arbitrate, and (2) whether the dispute in question falls within the scope of that agreement.  Nationwide Mut. Ins. Co. v. Cosenza, 258 F. 3d 197, 202 (3d Cir. 2001); see Chimicles, 447 F.3d at 209 (3d Cir. 2006) (requiring a written agreement before a court can compel arbitration); see also 9 U.S.C. § 2 (addressing the validity, irrevocability, and enforcement of written agreements to arbitrate).  When confronting questions of arbitrability, a court should "independently review the agreement" and "should not give deference to the arbitrator's decision . . ., but should exercise plenary review to determine whether the matter is arbitrable." McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16, 859 F.2d 1382, 1385 (9th Cir. 1988) (citing AT&T, Inc. v. Communications Workers of Amer., 475 U.S. 643, 649 (1986)).

Generally, in construing the scope of an arbitration provision, the court operates under a presumption of arbitrability.  AT&T, 475 U.S. at 650.  However,

> [W]here one of the parties seeking arbitration is not a signatory to the underlying agreement, a further step is added to the inquiry.  Before the presumption of arbitrability can apply, the nonsignatory party must show that the signatories intended it to derive benefits from the agreement.  Where such intent can be shown, and where the arbitration clause is susceptible to the interpretation that the nonsignatory has the right to enforce these benefits, then arbitration is proper.

McKinstry, 859 F.2d at 1384-85 (footnotes omitted).[6]  In McKinstry, the United States Court of Appeals for the Ninth Circuit held that a traveling contractors clause similar to the one at issue in the instant case "was clearly intended to extend certain direct and indirect benefits to workers other than those represented by [the signatory union – here, Local 1]."  Id. at 1386.  Accordingly, the Ninth Circuit concluded that the nonsignatory union – here, Local 5 – "was accorded rights under th[e] Agreement, and was accorded the ability to enforce these rights."  Id. at 1388.  Relying upon McKinstry, the United States Court of Appeals for the Eighth Circuit has also held that a nonsignatory union may enforce a traveling contractors clause in another union's collective bargaining agreement.  See Local Union No. 36, Sheet Metal Workers' Int'l Ass'n v. Atlas Air Conditioning Co., 926 F.2d 770, 772-73 (1990).  In Local Union No. 36, the Eighth Circuit stated:

---

[6] Our sister court in the Eastern District of Pennsylvania has concluded that "[b]ecause arbitration is a matter of contract, exceptional circumstances must apply before a court will impose a contractual agreement to arbitrate on a non-contracting party."  Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 332 (E.D. Pa. Oct. 20, 2004).  Where, however, the party seeking to enforce the arbitration clause is "a willing non-signatory," the theory of alternative estoppel may apply.  Id.  Alternative estoppel binds a signatory "to arbitrate at a non-signatory's insistence where there is an obvious and close nexus between the non-signatories and the contract or the contracting parties."  Id. at 333 (internal citations and quotations omitted).  No court in the Third Circuit appears to have been called upon to extend the theory of alternative estoppel to a factual scenario identical to that of the matter *sub judice*.

11

> The [traveling contractors clause], to which [defendant] is a signatory, requires [defendant] to comply with the collective bargaining agreement of the union in which territory [defendant] was working, here, the [plaintiff's] agreement. We construe the contract language as saying what it obviously means. [Defendant] is required to follow the [plaintiff's] agreement . . . [and defendant's] employees . . . are guaranteed the wages and benefits given to [plaintiff's] sheet metal workers.

Id.

Like the traveling contractors clauses at issue in McKinstry and Local Union No. 36, the traveling contractors clause at issue in the instant case was clearly intended to provide rights to nonsignatory unions like Local 5. The clause requires employers like Inter-State to "abide by the full terms and conditions of the standard Agreement in effect" on any job site outside of the area covered by the collective bargaining agreement. (Doc. 15 ¶ 12; Doc. 26 ¶ 12 (emphasis added)); see also Harris & Ruth Painting Contracting, Inc. v. Painters & Tapers Local Union 487 of the Brotherhood of Painters & Allied Trades, No. 96-1030, at *7 (E.D. Cal. Mar. 19, 1997) (concluding that traveling contractors clause requiring defendant-employer to "comply with all of the lawful clauses of the Collective Bargaining Agreement [in] effect" in any geographical jurisdiction in which the defendant-employer worked unambiguously authorized nonsignatory unions to enforce the agreement). When Inter-State elected to commence work in Local 5's territory, the traveling contractors clause was implicated, and Inter-State became obligated to abide by the terms and conditions of Local 5's collective bargaining agreement. Although Local 5 is a nonsignatory to the traveling contractors clause, the court finds that the clause establishes that "the signatories intended [Local 5] to derive benefits from

12

the agreement." See McKinstry, 859 F.2d at 1384-85; see also Harris & Ruth, No. 96-1030, at *8.

Moreover, the court finds that the broad language of the traveling contractors clause, which requires Inter-State to "abide by the *full* terms and conditions" of Local 5's collective bargaining agreement, incorporates the arbitration procedure that Local 5 utilized in this matter. See McKinstry, 859 F.2d at 1388 n.9 (recognizing that a traveling contractors clause could be interpreted to incorporate the dispute resolution procedures set forth in a nonsignatory union's collective bargaining agreement); Harris & Ruth, No. 96-1030, at *10 (finding that arbitration procedure from nonsignatory union's collective bargaining agreement was expressly incorporated by traveling contractors clause that required defendant-employer to abide by "all provisions relating to the settlement of grievances"). Had the signatories to the Local 1 agreement wished to avoid such a result, they could have tempered the broad language of the traveling contractors clause or expressly excluded other unions' dispute resolution procedures from its scope. Because the signatories failed to do so, the court cannot now read into the traveling contractors clause an exception removing Inter-State's obligation to comply with the dispute resolution procedures of Local 5's collective bargaining agreement. By signing Local 1's agreement and subsequently working in an area covered by Local 5's agreement, Inter-State subjected itself to the dispute resolution procedures set forth in Local 5's agreement. See Harris & Ruth, No. 96-1030, at *10; see also McKinstry, 859 F.2d at 1384-85 (requiring nonsignatory party to establish that it has

the "right to enforce" the arbitration clause). Accordingly, the court finds that the dispute between Local 5 and Inter-State was arbitrable and that the arbitration award cannot be vacated on these grounds.[7]

## IV. Conclusion

Having found that the dispute between Local 5 and Inter-State was arbitrable and that Inter-State has waived its right to assert any other defenses to the arbitration award, the court will grant Local 5's motion for summary judgment and will deny Inter-State's. An appropriate order will issue.

                                           S/ Christopher C. Conner
                                           CHRISTOPHER C. CONNER
                                           United States District Judge

Dated:       August 6, 2008

---

[7] Utilizing the test set forth by our sister court in the Eastern District of Pennsylvania, the court finds that the theory of alternative estoppel permits Local 5 to enforce the arbitration provision against Inter-State. See supra note 6.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL 5,** : <br>        **Plaintiff** : <br> **v.** : <br> : <br> **INTER-STATE TILE & MANTEL CO., INC.,** : <br>        **Defendant** : | **CIVIL ACTION NO. 1:07-CV-1150** <br><br> **(Judge Conner)** |

## ORDER

AND NOW, this 6th day of August, 2008, upon consideration of the cross motions for summary judgment (Docs. 13, 16), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 13) is GRANTED.

2. Defendant's motion for summary judgment (Doc. 16) is DENIED.

3. The Clerk of Court is directed to enter JUDGMENT in favor of plaintiff International Union of Bricklayers and Allied Craftworkers, Local 5 and against defendant Inter-State Tile & Mantel Co., Inc. with respect to all claims.

4. The Clerk of Court is directed to CLOSE this case.

                                                            S/ Christopher C. Conner  
                                                            CHRISTOPHER C. CONNER  
                                                            United States District Judge